**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 27 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ZHU ZHEN, | No. 10-71147 |
| Petitioner, | Agency No. A094-798-149 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted April 7, 2014[**]
Seattle, Washington

Before: HAWKINS, RAWLINSON, and BEA, Circuit Judges.

Zhu, Zhen ("Zhu") is a native and citizen of the People's Republic of China

("China"). According to her written application and oral testimony before the

Immigration Judge ("IJ"), on February 26, 2006, Zhu was arrested by the police in

China and tortured for her participation in a Christian home church. Zhu stated

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

that after her release she was fired from her work unit for talking with her co-workers about her religion. According to Zhu, to escape this religious persecution, she had herself smuggled out of China on May 4, 2006 and arrived in the United States on June 15, 2006. After removal proceedings were initiated against her, Zhu applied for asylum, withholding of removal, and protection under CAT. At her removal hearing, the IJ found Zhu not credible and denied her application. The BIA affirmed, and Zhu petitioned this court for review.

We review the BIA's decision that Zhu has failed to meet her burden of proof for asylum, withholding of removal, or relief under CAT for substantial evidence. *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). Adverse credibility determinations are reviewed under the substantial evidence standard. *Id.* The BIA and IJ's findings of fact, including credibility determinations, "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Zhu submitted her asylum application on November 22, 2006, and therefore this case is controlled by the REAL ID Act, which establishes a "totality of the circumstances" test for credibility determinations. 8 U.S.C. § 1158(b)(1)(B)(iii).

The IJ and BIA based their adverse credibility finding on three inconsistencies, at least two of which we find to have been supported by substantial

2

evidence. First, Zhu's I-213 Form, which an immigration officer filled out when she first entered the United States, stated only that she "claims she entered the U.S. to seek employment in New York." Zhu testified, however that she did not tell the officer that she was going to New York to look for employment, but rather told him that she left China because she "participated in [a] Christian church." Even though she testified that she did *not* tell the officer that she was going to New York to look for employment, she also testified that she did, in fact, go to New York. As the IJ stated in his decision, "In particular, the I-213 informs the Court that the respondent admitted upon apprehension that 'she entered the U.S. to seek employment in New York.' On cross-examination, the respondent denied making any such statement." We hold that this discrepancy between what she said she told the officer and what the I-213 Form documents, as well as her actual travel to New York, constitutes substantial evidence supporting the adverse credibility finding, especially considering the inherent credibility of I-213 forms. *See Espinoza v. I.N.S.*, 45 F.3d 308, 310 (9th Cir. 1995) (discussing an I-213 Form and concluding that "information on an authenticated immigration form is presumed to be reliable in the absence of evidence to the contrary presented by the alien").

The second inconsistency was the omission of Zhu's asserted employment from the official Household Register. The Register says Zhu was born in 1986, the

3

Education field is blank, and the Occupation field says "Child before school age." Zhu was not able to explain this inconsistency, and the IJ concluded that Zhu was not credible as to her claim of education and work experience. We conclude that this inconsistency, too, constitutes substantial evidence supporting the IJ and BIA's adverse credibility finding.

We hold that the record is not sufficient to compel every reasonable adjudicator to conclude that the IJ and the BIA erred in finding Zhu not credible, and therefore conclude that these two discrepancies between Zhu's testimony and the evidence in the record constitute substantial evidence of Zhu's adverse credibility.

Because Zhu failed to carry her burden for asylum, we also hold that the record does not compel the conclusion that she meets the more stringent standard for withholding of removal. *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000).

With regard to Zhu's CAT claim, although the country reports do show that there was some religious persecution in China in 2006 and 2007, it is not sufficient evidence to compel the conclusion that it is more likely than not that Zhu herself would be tortured if she were returned to China. *See Shrestha*, 590 F.3d at 1049.

Petition DENIED

4

*Zhen v. Holder*, 10-71147

HAWKINS, Senior Circuit Judge, dissenting:

I respectfully dissent.

Although the Real ID Act expanded the bases on which an IJ may rest an adverse credibility determination, it nonetheless requires such decisions to be based on the "totality of the circumstances." 8 U.S.C. § 1158(b)(1)(B)(iii). "Trivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity should not form the basis of an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010).

Zhen's detailed testimony about her arrest on account of her Christian faith and participation in an underground Bible study was internally consistent, consistent with her asylum application and consistent with country conditions reports on China. *See Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011). And although we have noted that "questioning an applicant on his knowledge of religious doctrine to determine if he is a true believer is not an appropriate method of determining eligibility for asylum," *id.* at 1088, Zhen nonetheless answered numerous doctrinal questions correctly, exhibiting significant knowledge of the Christian faith. The IJ essentially ignored other corroborating evidence Zhen submitted with her application, including a letter from a fellow church member who was arrested at the same time, and the dismissal

notice from her employer indicating Zhen was being terminated because of her participation in an underground religious activity.

Instead, the IJ seized on three trivial details, which are not inconsistencies as much as sins of omission. One—her current pastor's failure to specify how often she attends church in the U.S.—was so minor the majority does not even attempt to justify it. The second—failure to update Zhen's employment on China's official Household Register—is likely no more than a clerical error over which Zhen had no control. The final is that when initially intercepted by immigration officials at a bus station in Texas, she did not volunteer to the interviewing officer that she had left China because of religious persecution. *See Zhu v. Mukasey*, 537 F.3d 1034, 1040 (9th Cir. 2008) (noting this court hesitates to view such interviews "as valuable impeachment sources because of the conditions under which they are taken"); *see also Singh v. INS*, 292 F.3d 1017, 1023 (9th Cir. 2002) (such interviews are "perfunctory examinations" that "hardly provide an opportunity to explain one's circumstances").

In light of the totality of the circumstances, I would conclude the adverse credibility determination lacks substantial evidence and remand to the BIA for further proceedings.

Because China refuses to accept the return of its nationals,[1] we consign Zhen to a never-never land in which her future will be forever clouded. While China's stance should not serve as a reason to grant relief in all such cases, this petition is different. Her obviously sincere faith which put her at odds with the atheistic policies of a communist dictatorship renders her essentially a non-person in a land that treasures religious liberty.

---

[1] As the Department of Homeland Security itself has repeatedly recognized, China has proven to be unwilling to repatriate thousands of its citizens subject to final removal orders. Office of the Inspector General, "Detention and Removal of Illegal Aliens," OIG-06-33 (Apr. 2006), at 17-19 & n.37; *see also* Office of the Inspector General, "ICE's Compliance with Detention Limits for Aliens with a Final Order of removal from the United States," OIG-07-28 (Feb. 2007), at 6 (similar conclusion). The Supreme Court has described these individuals' plight as being in a "removable-but-unremovable limbo." *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 347 (2005).